Case number 18-1381, Barbrie Logan v. MGM Grand Detroit Casino. Oral argument not to exceed 5 minutes for plaintiff, 10 minutes for the amicus, and 15 minutes for the defendant. We have Mr. Kevin Carlson. On behalf of the appellant, you may proceed. Good morning, your honors, and may it please the court. My name is Kevin Carlson, appearing on behalf of the plaintiff, appellant Barbrie Logan. As the clerk indicated, we are allocating oral argument time 5 minutes to my argument on behalf of the plaintiff, appellant Ms. Logan, 10 minutes to the EEOC as amicus, and it is my understanding that the EEOC has reserved 1 minute out of its 10 for rebuttal time. Your honors, when I saw the district court's opinion in this case, the mistake in the opinion jumped off the page to me, and I think it should jump off the page to this court as being a clearly reversible error. The district court's holding that employees in Michigan only have 180 days to file an EEOC charge unless they have first filed a separate, stand-alone charge with the state Michigan Department of Civil Rights is contrary to the language of Title VII, the statute, Section 706E, as that statute has been interpreted multiple times by the United States Supreme Court in cases such as Mohasco and EEOC v. Commercial Products, and by this court in the Jones v. Errico case, and also EEOC v. Frank's Nursery and Crafts. The law is clear and has been settled for at least 30 years that plaintiffs in deferral states such as Michigan have 300 days to file EEOC charges, not 180 days, and contrary to the analysis of the district court, the 300-day filing period is not simply in effect here just because Ms. Logan resides in Michigan. There are other factors at play. One is the fact that the charge form that Ms. Logan signed is a dual-charge charge form. It says on its face that the plaintiff files the charge jointly with the EEOC and with the Michigan Department of Civil Rights. And the second factor at play is that Michigan, through the Michigan Department of Civil Rights and the EEOC, have a work-sharing arrangement under which Michigan has waived its 60-day deferral of exclusive state agency jurisdiction over the charge after it is filed. You put those two things together, and you have a 300-day filing rule, plain and simple. And if one were to ask 100 Michigan employment practitioners, plaintiff side, management side, and whoever else, how many days does a plaintiff in Michigan have to file an EEOC charge, the answer would be 300, 100 times out of 100. So the question here is whether or not contractually the parties can agree to limit that to 100, whatever, six months, right? That's right. So that's the issue? That's right. What do you have to say about that? There is a statute, yeah, and I wanted to get that background in. But what I say to that is that the cases cited by defendant for the proposition that a limitation on filing in terms of time need only be reasonable is not applicable when a properly enacted congressional mandate, in this case Section 706E, requires mandatory filing and exhaustion of remedies of the EEOC and provides for mandatory exclusive jurisdiction of the agency over the claim for 180 days post-filing. Those two congressionally mandated requirements taken together would completely preclude a plaintiff like Ms. Logan from filing a timely lawsuit if she follows what Congress tells her she has to do, which is go to the EEOC first, invoke its jurisdiction, grant it exclusive jurisdiction and power over the case for 180 days, and then await a right to sue letter before filing. These timelines and periods of exclusivity in the EEOC are no accident. They appear on the face of Section 706E of Title VII for a reason. As the Supreme Court laid out in EEOC v. Commercial Products in 1988, the language was forged after lengthy negotiations and filibuster and compromises to exactly how to structure this kind of complicated federal procedural scheme in the context of a remedial statute. And so it's our position that private employers are not empowered, as a matter of law, to overwrite Congress and say that a plaintiff has to file a charge within 180 days or file a lawsuit within 180 days or else risk being dismissed as untimely. So is it your position that private parties don't have any right at all to modify the Title VII statute of limitations? That's right. That's right. They can't override what Congress has prescribed, which is you can't go to federal court unless you go to the EEOC, and you can't go to federal court unless the EEOC issues a right to sue letter. And as the Supreme Court and this Court have both held, the practical effect of a 180-day statute of limitation period would be to preclude the plaintiff from following that congressionally mandated scheme. Well, and that's query here, and the others may have more to say on it, is as I read the magistrate judge and then the district judge's order, they say, well, this 180-day limit in the contract should mean the 180 days to go to the EEOC, not 180 days to get all the way to federal court. I kind of get the feeling that both sides disagree with that, but not explicitly. But why isn't that a reasonable reading? It puts the plaintiff in no worse a position than anyone in a non-deferral state. It would put the plaintiff in a bad position for a couple reasons. I mean, one is if a plaintiff goes to the EEOC's website, it says you have 300 days to file. If they read the Supreme Court cases on point, it says they have 300 days to file. And so requiring them by contract to go to the EEOC in less time would not only confuse the issue, it would lead to litigation on a case-by-case basis as to whether equitable tolling should apply. That's a misleading argument, but am I right that in a direct sense, they're no worse off than a person in a non-deferral state? Yes, they would be no worse off than someone who lives in a non-deferral state. However, that would nullify the congressionally approved process for deferral and work sharing. Finally, do you know the case of Circuit City v. Morrison, where they were sorting through a lot of things about arbitration and seemed to say that a one-year limit to go to arbitration was okay? A one-year limit would not affect the 300-day statute. Having to go to arbitration within one year if the EEOC wasn't completed with its process? I think you were required to go to arbitration in that Circuit City case. You may not be familiar with that. I'm not familiar with it here, Your Honor. Sorry. I see my time is up unless the panel has any more questions. Thank you. Jennifer Goldstein, Counsel for the EEOC May it please the Court, my name is Jennifer Goldstein, Counsel for the EEOC. Your Honors, the Supreme Court has said in Hymashof recently and then in the Wolf case from 1947 that parties may agree by contract to a shorter limitations period, provided that the time period is reasonable and provided that there is no controlling statute to the contrary. We submit that Title VII is a controlling statute to the contrary. It sets out an elaborate and precise administrative scheme. I think there are some 15 time periods specified for various actors in the statute. It set out this scheme in 1964. It then reconsidered it at some length and changed it, altered the time frames in 1972. And the whole point of this scheme is to put in speed bumps, to slow the rush of the parties to court so that to give the EEOC the time and the opportunity to help the parties resolve the matter without burdening the courts. This is what the Supreme Court said in Occidental Life, that Congress wanted to delay judicial action while the EEOC performed its administrative function. And this is what we do. On our website we have statistics that show that we resolve at the administrative level, we help parties resolve some 13,000 matters each year without the need to go to court. And I would add that all this takes time. The average amount of time that a charge is with us is from year to year fairly consistent. It's about 10 months. And obviously it can be quite a bit longer than that if there are serious talks of resolution. What's the EEOC's position on the district court's ruling about tolling? Yeah, I think there are a few. I think it says something about the contract that we're asking, the parties are asking, or rather MGM is asking that the contract be enforced, but the only way to make it consistent is to alter the terms of it. I think there are a few problems with it. The first thing is that it really creates an ad hoc regime. What we strive for is certainty and clarity. And this makes it, especially given this court's precedent, and I'll just refer to Amini v. Oberlin College 259 F. 3rd 493, which said that tolling should be sparingly granted. So it's unclear whether it would be. And even here, I think the uncertainty is highlighted by what went on here. The magistrate judge said, okay, that should be tolled for the period, that first 188th period, when the EEOC has exclusive jurisdiction. And what that means is that's the time before we have to issue a right to sue notice to an individual. In other words, the charge is ours unless we agree to grant a right to sue notice. But the magistrate judge... that you can't finish it in the 180 days. Well, that's what the regulation says. If we think, if they come to us and we realize that we won't be able to do it, we may. I would add, let me just... But even that's discretionary? Yes. It's discretionary. It's mandatory after 180 days. It's discretionary before. And just one point. The MGM says that we promulgated that in 2006. We actually promulgated it in October of 1977. And, in fact, there's a split in the circuits on whether that's a valid regulation. The D.C. Circuit has held that it's inconsistent with the statute. They held that in 1999. Inconsistent for what reason? The idea is that the statute says that we should have it for at least 180 days and try to resolve it. So what was inconsistent was the ability to do an RTS earlier than that? Correct. But the majority of circuits go the other way, and I don't believe this circuit actually has ruled on that question. The problem, the concern is that with agreements like this, we're going to feel forced to get rid of charges quickly, which really thwarts the goal of administrative resolution of charges. And it's the exact opposite of what Congress wanted. Again, to say to Occidental Life, what the Supreme Court said is that Congress hoped that a recourse to private lawsuit would be the exception, not the rule, and that the vast majority of disputes would be settled by the EEOC. I would add that MGM makes four arguments on appeal why it should be enforced. One is the equitable tolling point that you raised. The other thing that MGM has said is that, well, EEOC can only sue, and that is true, but that doesn't really go to the point that we want to try to resolve it without suit in the vast majority of matters. Just to highlight how that works out, we helped resolve the 13,000 matters in fiscal year 2017. We brought 199 suits. So it's really something that we view as a rarity, and only in the relatively unusual case that we bring suit. MGM has really relied on this Court's Thurman decision. I want to just highlight that that wasn't a Title VII. Not only was it not a Title VII case, as MGM concedes, but the Court doesn't even seem to think that it was. In the opening paragraph of that case, it talks about which claims are before the panel. It does not list Title VII. It mentions Title VII only once in describing what had been brought in a prior dismissed lawsuit. It plainly wasn't in the Court's mind, and in any event, because it's not a Title VII case, it wasn't present. It was a 1981 case, right? I'm sorry. Yes, correct, and a Michigan State law case. At most, it's unconsidered dicta, which this Court certainly need not follow, given that the Court didn't discuss how to contrast the administrative scheme with the limitations period. I will touch briefly on the 380 versus 300-day period. In every case in Michigan, or for that matter in Ohio or Tennessee, when someone walks in our doors to file a charge, the EEOC, acting as agent for the state agency, first initiates the state proceedings. They're immediately automatically terminated unless the state, and I should add, unless the state or the individual affirmatively requests otherwise. But the default rule is that they're automatically terminated. The EEOC charge is then filed, and then it's timely within 300 days. Sorry, when you say they're automatically terminated, the state proceeding is automatically terminated? Yes, and that was what was at issue in commercial office products by the terms of the work-sharing agreement. Again, we get some 84,000 charges a year. It's sort of an efficient way to manage the workload of the EEOC and the state. Normally, the state has 60 days after the state proceeding is initiated to work on it before the EEOC charge can be filed. But what the Supreme Court held in commercial office products was that if there's an agreement between the state and the EEOC, that time of the state's exclusive jurisdiction, that 60-day period, can automatically be waived. So does that mean that in effect the state, I guess I had the feeling that in a deferral state, that there was this two-step process, but if it's automatically terminated, it just means that the EEOC gets the extra 120 days? Well, it's complicated. I mean, as I said, if an individual, essentially that's right. Are all four of the states in the circuit deferral states? So Ohio, Tennessee, Michigan are. Kentucky, I think, is a little. I believe that Louisville and Lexington. I don't think the state is. Kentucky is always a little. Exactly. Exactly. So I'm not sure what percent of the state. It may be all. I'm just frankly. Let me just ask you one other question. You talked about the 13,000 cases that you resolved. Does that mean then that the number of cases where right-to-sue letters were issued is a different number, a much larger number? Yeah. So if we get 84,000 a year. 70,000. Yeah. Some of those are that we've actually found cause to believe there's discrimination, but we can't resolve it. Some of them are that the person actually, we don't issue a right-to-sue because we can't even find the person. But a lot of them are where I would say probably the majority are where we just, based on the charge, we don't have enough evidence to conclude. That's the ones that we generally see are that category. So it's some number greater than 13,000 but less than 84,000. Exactly. But there are many that you don't see, and that's our point. I'll reserve the rest of my time. Thank you. Madam Presiding Judge, and may it please the Court, Joe Rashad appearing on behalf of MGM. Your Honors, we have two orders that are under review this morning, a summary judgment order and a motion for reconsideration order. We believe that those are subject to two different standards of review and address two different issues, and so we want to address each of those this morning with the Court. I'll begin first with the order for summary judgment. We believe that the district court correctly held that the party's contractual limitations period is enforceable. We believe that Thurman does control. And while we do agree with the EEOC that that case did not have a Title VII action in it, the Court nonetheless operated under the impression that it did. In fact, if the Court were to review Thurman, it would find that there were in fact two different cases, one that was filed in federal court, one that was then refiled in state court, and ultimately found its way up to the Court of Appeals after removal. And in the original district court action, the Court noted that the Thurmans filed a lawsuit alleging violations of Michigan's Elliot Larson Civil Rights Act, Title VII, a Section 1981 claim, and then various state law torts. Later on, the Court says the Thurmans filed a second lawsuit, the present suit before the Court, in the Oakland County Circuit Court, alleging the same claims as the original case. So what we have here is really an analytical error. Were there Title VII claims before the Court in Thurman at the time of deciding the case? No, Your Honor. But we believe that that's an analytical error because the Court was laboring under the impression that it was addressing a Title VII case. And so therefore, under this Court's decision in Sammy and Ollie v. Ohio Department of Liquor Control, this panel can't overrule an earlier panel simply because it has discovered an analytical error. Well, Section 1981 was and is a viable way of pursuing claims, but it differs markedly from Title VII in that it does not have the statutory structure of Title VII, and it has a state statute of limitations. It's one of those statutes which borrows the limitation period of the state. In Tennessee, it's a year. That is correct, Your Honor. And so I'm not sure that Thurman gets you very far. All right. Well, Your Honor, if that's the case, then we'll obviously have to address the three errors that Ms. Logan raises with respect to summary judgment. The three that she raises are, first, that she didn't – Wait a minute before you get into that. Have you found that – look at this Morrison case, Morrison v. Circuit City Stores. Your Honor. The Sixth Circuit en banc case from 2003. I believe that was the – Yeah, that's the – Judge Boggs had – Judge Boggs reference. No, Your Honor. I'm not familiar with that case. Well, I think that case might actually give you more support than Thurman does. Well, Your Honor, I would be more than happy to prepare a supplemental briefing on that issue if the Court would like. We certainly don't want to pass up that opportunity. I would note, Your Honor, that before moving on to the errors that Ms. Logan raises, it's a small or perhaps not so small coincidence that MGM's employment application language mirrors in all material respects this Court's decision in Thurman. So certainly coupled with the fact that there is some indication in the opinion that it is a Title VII claim that's being adjudicated, even though, in fact, it wasn't, it does appear that there are people relying on it for that purpose. But if the Thurman case does not control, then, again, Logan raises three errors. First, that she didn't read the contract. Second, that the six-month limitations period interferes with the EEOC's exclusive jurisdiction. And finally, that the six-month period violates a public policy by abrogating her right to file a private cause of action under Title VII. Your Honors, for the first issue, that she didn't read the contract, we intend to rely on our briefs unless the Court has any questions. We think it's a pretty clear hornbook law that that's not a defense to enforcement of a contract. With respect to the EEOC's period of exclusive jurisdiction, we respectfully disagree with our colleague from the EEOC that a shorter limitations period interferes with the EEOC's ability to discharge its administrative function. In fact, the record, I think, proves this. Ms. Logan did file a charge with the EEOC. The EEOC did process her charge in the usual course of business, and it did issue her a right to sue letter. So the contractual limitations period did not in any way impact the EEOC's ability to perform the administrative function that Counsel spoke of this morning. Then the right to sue letter is effectively ineffective because she's passed your contractual limit. Well, and that's where we get into the equitable tolling issue, Your Honor. And that, I think, is highlighted most by the accidental life case that the EEOC primarily relies on. That case establishes a dual-track nature, or at least recognizes a dual-track nature to Title VII enforcement. As a society, we want to eliminate workplace discrimination, and so we have a public track, if you will, where the EEOC is allowed to process claims, and if it can't reach a resolution, is entitled to vindicate the public's interest through an EEOC-initiated lawsuit. At the same time, there's a private right of action to address the injury to the individual. And I think Judge Bush noted this morning that we have a Supreme Court precedent that the parties are able to contract for shorter periods of time. And what we're talking about then is really the party being able to contract away their shorter period of time under their private right of action. So we're not infringing in any way, shape, or form on the EEOC's ability to administer its function under the Act. With regard to their right, then, help me here. Does it remain MGM's position that they would be required to get into federal court within 180 days, as opposed to being required to go to the EEOC within 180 days? Well, we believe that they would only need to initiate a claim with the EEOC within the 183 days that are provided in the contract. And your position is sort of aligned with the magistrate judge here. That is correct, Your Honor. Yes. Our position is as long as they beat the clock on the statute of limitations. The word claim includes going to the EEOC. Correct, Your Honor. The way the contract is written is it's claim or lawsuit, and so we encompass that there. But you are saying, though, that the parties are allowed to contract away this additional 180 days that they would get under the Michigan extension? Yes, we believe that's right, Your Honor. And really, while we understand – But isn't that part of the congressional mandate, too, that states can grant these 180-day extensions? 120. Or 120-day extension, yeah. Well, Your Honor, I think what we're talking about here is really a badge of federalism when you take a look at the structure of the statute. As Judge Boggs noted earlier, there is 180 days. That is the congressional baseline for what is reasonable. And our contract provides for three additional days for somebody to be able to bring their claim. Not a huge amount of time extra, but obviously it is consistent with what Congress deemed to be reasonable. The 300 days for the deferral statute is really a recognition that the states, in their sovereign capacities, have an interest in administering their own anti-discrimination laws and processes. Of course, Michigan is proud to be the first state to have a constitutionally created Civil Rights Commission. So Congress recognizes that states need to be able to exercise their own policies, but that, again, goes back to the public-private nature of what we're dealing with here. And if a private party wants to limit the time frame, the private party should be able to do that. If we think, for example, and I believe Judge Boggs used in one of the earlier arguments an analogy to the Fourth Amendment, in virtually every other situation where a statute purports to confer a right on somebody, they're free to waive it. Indeed, one of the cases that the EEOC notes in its footnote is the Taylor v. Western and Southern Insurance Company case. That's out of the Seventh Circuit. But there the court said that a restriction on the ability to contract for a shorter period is that parties can't do so if a federal statute expressly prohibits them from doing so. Of course, Title VII does not include any such language. Now, the EEOC believes that that only applies in Section 1981 claims, but we are not aware of any court limiting Taylor to 1981. And, indeed, in preparing for oral argument, I became aware of some cases, district court cases across the country, where courts have not limited Taylor to the Section 1981 context. Now, unfortunately, I haven't cited those in my brief, just becoming aware of them, so I won't go into those unless the court cares for the citations. But the point is that this artificial distinction that the EEOC is drawing between Title VII and Section 1981 claims, solely because of the administrative process, doesn't seem to withstand scrutiny with the lower courts and with the Seventh Circuit, because they are recognizing this distinction between private and public tracts under the statute. What do you say about the sort of confusion argument that, okay, somebody is just like shrink-wrap computer things. Somebody clicked something that agreed to this six months, but the EEOC website is going to tell them they have 300 days. Well, Your Honor, I think there is always going to be some risk of confusion, but I would point back to the record in this case where Ms. Logan wasn't confused. She, on day 216, filed with the EEOC and initiated that process. Indeed, Ms. Logan is a fairly experienced litigant. We don't know what's in her mind or your folks' mind, but she did let the 180 days go by. That is, had she simply gone to the EEOC 37 or 33 days earlier that we've now agreed on, she would have been okay. Is that right? Yeah, I think that's right, Your Honor. Ultimately, this is no different than any other time that the EEOC would need to update its website. You simply put on there a disclaimer that would say you have 300 days unless you've signed a contract to the contrary. So they can certainly make people aware or at least remind them that they may have engaged in contractual negotiations on that issue. Is this the first litigation that this issue has come up? I mean, I would presume whoever the big law firm representing the MGM Casino has had this in their contracts for some time and maybe other employers as well. Well, Your Honor, to my knowledge, it hasn't come up. With respect to MGM, a former partner of mine went in-house at MGM and was responsible for the drafting of the contract. So I'm here trying to defend his honor, if you will. I'm looking at the contract language and it doesn't seem to agree with what you're saying because you're saying the claim, it says the claim or lawsuit must be filed no more than six months. And you seem to be saying that as long as you file something with the EEOC within six months, you've complied. But I read the provision to say you actually have to bring the lawsuit within six months. Well, it's a claim or lawsuit has to be brought within that time. And so our position would be that you have to file the claim within the period. As soon as you file that claim, the tolling clock turns off. We wait until the EEOC process is resolved. The clock turns back on. Whatever time you have remaining would be your time to file your lawsuit in court. So you ultimately have 183 countable days, thinking of the Criminal Justice Act with the Speedy Trial Act, countable time that you would have to bring your claim. Unless there's any questions further on that, I'd like to address the second order as well, and that's the issue that I think Counsel Firmist Logan spent most of the time on this morning, and that was the order denying reconsideration. We don't normally have disagreements on standards of review, but I think it's important to highlight here that we do. The parties agree that the court has a de novo review, but that review is to be from the position of the district court applying the same standard. Under our local rule, that requires a palpable error that misled the court and that correcting it would result in a different disposition. This court in the INDA case, I-N-D-A-H versus S-E-C, held that this is essentially an abuse of discretion standard. And so approaching it from that perspective, Your Honors, we don't believe that the 300-day deadline interpretation from the district court is in any way, shape, or form an error, but let's assume first that it is. We think it's irrelevant to the issue on summary judgment. Whether she timely filed with the EEOC isn't relevant to what the magistrate judge ruled and the district court adopted, that she had to act within the 180 days. So whether she has 300 days in a deferral state or not really is irrelevant under the party's contractual language. But we would submit that it's actually not erroneous, and that is because the existence of these work-share agreements is essentially a question of fact. Whether they're enforceable or not, of course, is a question of law. But as the EEOC noted in its addendum, it presented the work-share agreement dated from 2012, and it had to show an extension of that agreement because it expired in 2014, the relevant date here being in 2015. So if these are documents that expire, then by definition, if somebody wants to rely on them to shoehorn themselves into some sort of an exception, they need to come forward to the court and prove that that, in fact, exists. That wasn't done here, so we can't say that the district judge abused her discretion. Unless the court has any questions, I'd be happy to conclude and say the MGM requests that the court affirm in all respects. Thank you. Two points, Your Honor. First, this court has held that the determination of whether the 300-day period was met is a question of law review de novo. That's Amini v. Oberlin College, 259F3rd at 497-98. The second issue I want to raise is what the contract actually said. Judge Bush, we agree with you. Filing a charge is not a claim. The contract says lawsuit or claim. And, in fact, in the defendant's brief, they said on page 2, the statement of the issue is, does Title VII prohibit employees from agreeing to file lawsuits alleging discriminatory employment practices within six months? It's a little unclear. They said it as much, again, on page 8 of their brief. She forfeited the right to file a lawsuit by waiting 183 days. So it's a little unclear why they're shifting their argument at this stage. The last point I want to make is we are not familiar with the Morrison v. Circuit City case, so we will certainly take a look at it. Arbitration is a little different than going into court. I assume you don't need a right to sue. So we will take a look and file a letter if we have anything to say about it. Thank you. All right. We thank you both for your argument. You all for your argument. And we will consider the case carefully. And with that, I think we have...